CLEMENTS, administrator, *et al. vs.* WHEELER.

1. The grant from the state to the premises in dispute having issued to Christopher Day, and there being in evidence a deed from his administrator, and also a deed of prior date from Christopher P. Day, it was not error to charge the jury that if the two names designated one and the same person, the grant would apply to that person. Although there was no direct evidence on the question of identity, the jury had before them one·or more relevant circumstances on which to pass, and it was their province to determine their effect.

2. In making out adverse possession in one having color of title, and under whom the defendant claims as a purchaser, it may be shown that an occupant of the premises declared, while in possession, that he held under a certain person who said he was the agent of the person whose statutory title the defendant seeks to establish. Such ev-

idence is admissible, not for the purpose of proving the asserted agency, but for the purpose of showing on whose supposed right and permission the occupant rested his possession, his declarations amounting to a virtual acknowledgement that the person named as principal was his real landlord.

3. Partly on account of the newly discovered evidence, and partly on account of the want of fullness and certainty in the evidence as contained in the record, a new trial ought to be granted.

Ejectment. Grants. Deeds. Evidence. Prescription. New trial. Before Judge UNDERWOOD. Walker Superior Court. February Term, 1878.

On August 7, 1876, John Doe, on the demise of Clements, as administrator of Christopher Day, of Silva, of Solomons, of Cotting, executrix of David G. Cotting, and of Bryant, brought ejectment against Richard Roe, and Wheeler, tenant in possession, for lot of land 263, in 8th district and 4th section of Walker county. The defendant pleaded the general issue and title by prescription.

The evidence for the plaintiffs, so far as material, was as follows:

1. Grant covering lot 263, 8th district and 4th section of Cherokee county, to Christopher Day, dated July 22, 1839.

2. Deed from Clements, administrator of Day, to Silva, covering same lot, dated November 5, 1872, recorded October 20, 1873.

3. Deed from Silva to Solomons, covering one undivided half interest in said lot, describing it as originally in Cherokee but now Walker county, dated June 24, 1873.

4. Deed from Solomons to Cotting, covering such half interest, dated October 15, 1873.

5. Appointment of Frances G. Cotting as executrix of her deceased husband, David G. Cotting, November 5, 1874.

6. Deed from Silva to Jane Wallace Bryant, covering half interest in said lot, dated in July, 1875.

7. R. S. Nealey, who testified, in substance, as follows: Defendant, Wheeler, went into possession of the lot in controversy about four years ago ; witness had possession for one

year under a man by the name of Lawrence; he was followed by Scoggins, a son-in-law of defendant, who held under defendant. Witness built a cabin on the place and cleared out the wild growth, which required considerable work. When Wheeler took possession through his son-in-law, some four years since, he cleared some fifteen acres, and added to the house by building a shed. The lot was vacant and uncultivated until witness took it in hand. He held under Lawrence, and not under Minis.

8. Thomas P. Harris, who testified substantially as the preceding witness.

9. Declaration in complaint for same lot in favor of Silva and David G. Cotting, against John B. Wheeler, filed in office July 15, 1874, and dismissed July 29, 1876.

The defendant introduced, in substance, the following testimony:

1. The same grant as was offered by the plaintiffs, which had been produced by him under notice.

2. Deed from Christopher P. Day to Sarah Beggs, covering said lot, dated May 27, 1839; recorded August 31, 1840.

3. Deed from Sarah Beggs to Philip Minis, dated April 6, 1840.

4. Deed from the heirs-at-law of Philip Minis to Calvin C. and John B. Wheeler, dated November 30, 1872.

5. Deed from Calvin C. to John B. Wheeler, covering undivided half interest, dated March 1, 1873.

6. William Harris, who testified, in brief, as follows: More than ten years before the war, a man by the name of King went into possession of the lot. While in possession, King said that he went in under one Edwards who stated that he was the agent of Dr. Minis. He remained in possession some two or three years, built a cabin and cleared some land. He was followed by one Spangler. Do not know how long he remained in possession, nor who he held under. Spangler was followed by Edwards, who said, while in possession, that he held under Dr. Minis. Think he re-

mained in possession one or two years. The possession of King, Spangler and Edwards did not cover more than six years. The place became vacant, and so remained until Nealey took possession after the war. It was unoccupied for four or five years before the war; the fences and houses were taken off. Edwards died about the commencement of the war.

7. William Wheeler testified, in brief, as follows: As to possession of King, substantially as preceding witness. King was succeeded by Spangler, who said, while in possession, that he held under Dr. Minis. He was followed by one Bird, who went in under Spangler to fill out the time which the latter claimed to be entitled to under Minis; he remained one year. Bird was followed by Edwards, who said, while in possession, that he held under Minis. He cultivated the place two or three years, and then moved off the fence-rails and cabins, stating that Minis had instructed him to do this to keep off intruders. A Mrs. Mitchell occupied a house on a different part of the land while Edwards was in possession, but do not know under whom she held.

The remainder of the testimony of this witness was substantially as that of the preceding witness and Nealey.

The jury found for the defendant. The plaintiffs moved for a new trial upon the following among other grounds:

1. Because the court erred in charging the jury, after stating that a grant issues to a person and not to a name, that "if Christopher Day and Christopher P. Day are one and the same person, the grant would apply to that person," there being no evidence to authorize such charge.

2. Because the court erred in charging that "if the two names belong to one person, then the oldest deed from Day would convey the title," there being no evidence to authorize the charge, if it were otherwise correct.

3. Because the court erred in allowing Harris and Wheeler, witnesses for the defendant, to testify to the sayings of King as to how and under whom he held possession, giving therein the declarations of Edwards as to his agency, as detailed in the testimony.

4. Because they have discovered since the trial, that they can prove by Harrison Dalton, that he moved King (about whom Harris and Wheeler testified) on said lot in 1846 or 1847; that Edwards objected to King's going on said land and tried to get him off, which he finally succeeded in doing ; that Edwards told him several times that he (Edwards) had no authority from Minis, or any one else, to rent or control said land, and that he was not agent of said Minis for that purpose.

This last ground was supported by the usual affidavits.

The motion was overruled, and plaintiffs excepted.

DABNEY & FOUCHE; W. P. LUMPKIN, for plaintiffs in error.

SHUMATE & WILLIAMSON; J. C. C. CLEMENTS, by brief, for defendant.

BLECKLEY, Justice.

1. The land was granted by the state to Christopher Day, of Chatham county ; and the administrator of Christopher Day sold and conveyed it in 1872. This was the source of the plaintiffs' title. The defendant's paper title commenced with a deed of bargain and sale from Christopher P. Day, of Savannah, (which is in Chatham county), made in 1839. It is plain that if Christopher and Christopher P. were one and the same person, the defendant's title was better than the plaintiffs' ; for if the grantee from the state conveyed in 1839, his administrator had nothing to convey in 1872. It is true, the grant issued in July, and the deed from Christopher P. is dated in the previous May, but this would seem to make no difference, the said deed having been recorded in 1840, and the sale by the administrator not having been made until 1872. 25 *Ga.*, 648 ; 29 *Ib.*, 17, 440 ; 24 *Ib.*, 150, 489. Each of the deeds was founded on a valuable consideration, and acknowledged the receipt of the purchase money. There was no direct evidence that Christopher and

Christopher P. were the same person, but both were of Chatham county, and perhaps there were other relevant circumstances tending to establish their identity. It was the province of the jury to determine the effect of all. 11 *Ga.*, 620; 15 *Ib.*, 276, 277. There was no error in the charge.

2. While in possession, Harris said he held under Edwards, who was agent for Minis. This was equivalent to a declaration by Harris that he held under Minis. It did not prove that Edwards was the agent of Minis; it only proved that Harris rested his supposed right to possession on the supposed right of Minis, having derived the possession through Edwards, and, as he supposed, from Minis, Edwards having represented himself to Harris as the agent of Minis. It will be seen that the materiality of this scheme is nothing, except to hold Harris up to Edwards, and Edwards up to Minis. Afterwards, Edwards had possession in person under Minis.

3. In granting a new trial, two or more grounds may be considered together. Partly on account of the newly discovered evidence, and partly on account of the want of fulness and certainty in the evidence as contained in the record, a new trial ought to be granted.

Judgment reversed.